The Honorable Becky Lynn State Representative 105 South 3rd Street Heber Springs, Arkansas 72543-3805
Dear Representative Lynn:
This is in response to your request for an opinion on the validity of a memorandum issued by the Arkansas Department of Health with regard to the regulation of individual sewage disposal systems. Specifically, you have enclosed copies of two separate Health Department memos. The first, dated August 12, 1993, and designated Memo # 85, is entitled "Soil Suitability Guidelines for Subsurface Sewage Disposal in Subdivisions." It establishes guidelines for soil suitability and minimum lot sizes for proposed subdivisions and mobile home parks seeking installation of individual sewage disposal systems. You state that the memo refers to the content as "guidelines," and encourages their use by industry.
The second memo at issue is dated September 26, 1994. It is a short memo from two employees of the Health Department to all "Area 10" Sanitarians. "Area 10" includes nine counties in the northern part of the state. The memo states in pertinent part that: "[a]s of October 1, 1994, all new subdivisions will be required to comply with the current soil suitability Guidelines for Subsurface Sewage Disposal in Subdivisions. Lot size requirements will be those recommended under each category of soil suitability." The memo requests dissemination of the guidelines to all "designated representatives" and a notation of the effective date to them. You note that the guidelines specifically require proposed subdivision lot sizes to be, at a minimum, two acres with wells and one acre with public water. You also note that in contrast to the above, the current "Rules and Regulations Pertaining to Sewage Disposal Systems, Designated Representatives and Installers" provide, as to minimum lot size, only that: "For the purpose of determining minimum lot size, the leaching system site shall be twice as large as would be required for installation of the individual sewage disposal field. . . ." Id. at Rule 2.2.(B). You indicate that on suitable soils and sites, this requirement can be met on parcels of one-half acre.
You note that the relevant state law, Act 402 of 1977 (codified at A.C.A. § 14-236-101 to -118), authorizes the Department of Health, specifically the "Division of Sanitarian Services,"[1] to adopt and amend rules and regulations for subdivisions proposing to use individual sewage disposal systems. You state that this authority, however, is "subject to the following procedures: Approval by the Joint Interim Committee on Public Health Welfare and Labor,[2] Arkansas State Board of Health[3] and compliance with the Arkansas Administrative Procedures Act."
Your question is whether the "Arkansas Health Department policies issued in the above manner which have the effect of making or changing existing regulations violate Arkansas Statutory Requirements. And further, [whether] these Arkansas Health Department policies [are] legally enforceable."
RESPONSE
It is my opinion that the answer to the question of whether the policies "violate Arkansas Statutory Requirements" depends upon whether they were intended as mandatory rules in all cases. If so, the policies have no effect unless promulgated pursuant to the Arkansas Administrative Procedures Act or ("APA"). In my opinion, because the memo in question was not, as a factual matter, promulgated pursuant to the APA, it is not, standing alone, legally enforceable. Reference to the applicable state law and Rules and Regulations Pertaining to Sewage Disposal Systems, Designated Representatives and Installers would be necessary in order to determine, in a given case, whether the Department is justified in requiring a particular minimum lot size.
Some explanation is necessary. As you have indicated, the Administrative Procedures Act or ("APA"), codified at A.C.A. § 25-15-201—214, defines a "rule" as "any agency statement of general applicability and future effect that implements, interprets, or prescribes law or policy, or describes the organization, procedure, or practice of any agency." A.C.A. § 25-15-202(4) (Supp. 1997). "Rule-making" is defined as "agency process for the formulation, amendment, or repeal of a rule." A.C.A. §25-15-202(5). Section 25-15-204 sets out the procedure for the adoption of rules. Public notice, filing of the rules, and opportunity to comment are required. A.C.A. § 25-15-204(a)(1), (2) and (d). "No rule adopted after June 30, 1967, shall be valid unless adopted and filed in substantial compliance with [A.C.A. § 25-15-204]." A.C.A. §25-15-204(f). See also A.C.A. § 25-15-203(b) ("No agency rule . . . shall be valid or effective against any person . . . until . . . filed and made available for public inspection as required in this subchapter").
A question arises as to whether the content of the 1994 memorandum, and the 1993 guidelines to which it refers, together constitute a "rule" triggering the applicability of these statutory requirements. To be so classified the memos must be an "agency statement" of "general applicability" and "future effect" that "implements," "interprets," or "prescribes" law or policy. In my opinion, the memorandum is an "agency statement" of "future effect." The most pertinent questions turn upon whether it is of "general applicability," and whether it "implements" or "prescribes" law or policy.
The memo applies to all counties in "Area 10," which, according to my understanding, includes nine counties. The phrase "general applicability" is not defined in the APA, and I have found little interpretive case law upon the meaning of this term. Cf. Eldridge v. Board of Correction,298 Ark. 467, 768 S.W.2d 534 (1989) (site selection for an adult detention facility by the Department of Correction is not a "rule" for purposes of APA because not of "general applicability"). The official commentary to A.C.A. § 25-15-202(4) notes that the Model APA, upon which Arkansas' act is based, omits the phrase of "particular applicability," which appears in the federal act. The commentary states that this omission "limit[s] its scope, but clarif[ies] its meaning." "Attention should be called to the fact that rules, like statutory provisions, may be of "general applicability" even though they may be of immediate concern to only a single person or corporation, provided the form is general and others who may qualify in the future will fall within its provisions." This commentary is not particularly helpful in determining whether an agency statement of geographic application to less than the state as a whole is considered a statement of "general applicability." I have found no satisfying evidence of legislative intent on this point. Some states apparently expressly define the terms "rule" and "general applicability" as including statements that apply to less than the entire state, provided the form is general and the statement is capable of being applied to every member of an identifiable class. See, e.g., Louisiana Statutes Annotated, 49-950 et seq. In my opinion, the 1994 memorandum in question can be classified as being of "general applicability," as it applies to all members of an identifiable class even though only in a defined region or area of the state.
The next question for resolution is whether the 1994 memorandum was intended to, or whether it in fact does, "implement" or "prescribe" "law or policy." I am not in a position to determine, as a practical matter, the intention of the Department of Health in the issuance of this 1994 memorandum. Nor am I aware of its actual practice in adhering to its requirements. It is possible that the 1994 memorandum was intended as a "rule," or on the other hand, simply as a general statement of policy. The distinction is discussed in 2 Am. Jur. 2d. Administrative Law, § 163,[4] in pertinent part as follows:
 Some courts provide that a general statement of policy is neither a rule nor a precedent but is merely an announcement to the public of the policy which the agency hopes to implement in future rulemakings or adjudication, or what the agency's prospective position on an issue is likely to be.
* * *
 Policy statements often announce factors or tentative goals which are important to an agency. . . . These types of statements are often important guides to the exercise of discretion.
* * *
 The critical factor in determining whether a directive announcing a new policy is a substantive rule or a general statement of policy is the extent to which the challenged directive leaves the agency, or its implementing official, free to exercise discretion to follow, or not to follow, the announced policy in an individual case. To the extent the directive merely provides guidance to the agency officials in exercising their discretionary powers while preserving their flexibility and their opportunity to make individualized determinations, it constitutes a general statement of policy.
* * *
 Unlike legislative rules, nonbinding policy statements carry no more weight on judicial review than their inherent persuasiveness commands. When the agency applies a general statement of policy in a particular situation, it must be prepared to support the policy just as if the policy statement had never been issued.
2 Am. Jur. 2d Administrative Law, § 163 at 187-89. [Footnotes omitted.]
The same text notes that "an agency may not adopt a guideline or policy directive in lieu of a rule." Id. at § 159. The "inquiry as to whether a statement is a rule, and subject to the rulemaking requirements must focus on the actual action undertaken by the directive, to see whether the policy being implemented has the effect of being a rule." Id.
I cannot determine, from the information supplied, whether the Arkansas Department of Health requires compliance with the 1994 memorandum and the guidelines discussed therein in all cases, or whether it is free to deviate from these standards in a given case. In the latter case, the 1994 memorandum may be classified as a "general statement of agency policy," rather than a rule. In such case, compliance with the notice, hearing and comment provisions of the APA is unnecessary. If the 1994 memorandum was intended to be of binding effect in all cases and leave the Department officials no discretion, it is in all likelihood a "rule" for purposes of the APA and should have been promulgated pursuant to the provisions thereof. In either case, the 1994 memorandum and guidelines are not, standing alone, legally enforceable. See discussion above, quoting
2 Am.Jur.2d Administrative Law, § 163 at 189, and A.C.A. §§ 25-15-203(b) and25-15-204(f).
Senior Assistant Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:ECW/cyh
[1] This Division is also sometimes referred to as the Division of Environmental Health Protection." See, e.g., Act 217 of 1999 (changing the references to this Division in another title of the Arkansas Code).
[2] This requirement, originally found in Act 402 of 1977 and codified at A.C.A. § 14-236-107(b)(1), now requires "review" of the House and Senate Interim Committees on Health, Public Welfare and Labor or the appropriate subcommittees. Cf. Chaffin v. Arkansas Game and FishCommission, 296 Ark. 431, 757 S.W.2d 950 (1988) (holding "review and advice" of executive agency contracts violative of the "separation of powers" doctrine).
[3] I have found no specific provision in Act 402 of 1977 requiring State Board of Health approval of the regulations authorized at A.C.A. §14-236-107. The State Board of Health, however, is invested with broad general authority to regulate public health (A.C.A. § 20-7-109 (Supp. 1997), and was transferred to the Department of Health by a type 4 transfer in 1971. See Acts 1971, No. 38. As such, it retains all its statutory authority, powers, duties and functions. See A.C.A. §25-2-107(a)(1). Rules and regulations of the State Board, are however, subject to approval of the Governor. Id.
[4] The introduction to this section explains that the federal APA expressly uses and distinguishes the terms "rule," "interpretive rule," "procedural rule" and "general statements of policy." 2 Am. Jur. 2dAdministrative Law § 159. It also notes, however, that while the Model State Administrative Procedure Act (upon which most state acts are based), does not use these terms, state courts sometimes make use of them.